(564 P.2d 153)
No. 48,341

BERNARD BAKER, d/b/a/ BAKER POPCORN COMPANY, *Appellee* and *Cross-appellant,* v. JAMES W. RATZLAFF, *Appellant* and *Cross-appellee.*

Opinion filed April 29, 1977.

*Leon E. Roulier,* of Colby, for appellant and cross-appellee.

*J. Stephen Nyswonger* and *Lelyn J. Braun,* of Braun & Nyswonger, of Garden City, for appellee and cross-appellant.

Before REES, P.J., FOTH and SWINEHART, JJ.

REES, J.: This is an action for breach of contract. The case was tried to the court and judgment was entered for the plaintiff. Both parties appeal. The defendant asserts that the trial court erred in its finding that he breached the contract. Plaintiff contests the amount of the judgment.

Plaintiff is a buyer and distributor of popcorn. His business office is in Garden City. He operates a plant at Stratford, Texas. Defendant is engaged in farming and it appears that he is the operator of land in Thomas County. The written contract that is the subject of this lawsuit was entered into by the parties in 1973.

It was agreed by the parties that in 1973 defendant would raise 380 acres of popcorn and the plaintiff would buy the crop. Plaintiff was to provide seed popcorn at a stated price. Plaintiff was to purchase the popcorn crop, shelled and delivered by defendant to plaintiff's plant at Stratford, Texas, at a price of $4.75 per hundredweight. The popcorn was to be delivered by defendant upon plaintiff's order. Plaintiff was to order delivery of one-third of the crop by March 30, 1974, one-third by June 30, 1974, and the balance by September 30, 1974. The contract included other terms that dealt with the quality of the popcorn to be delivered, payments to be made by plaintiff to defendant for

storage and transportation, interest to be paid by plaintiff on the popcorn held in storage by defendant from the time of harvest to the time of delivery, and other matters. The particular provisions of the contract that give rise to this litigation are as follows:

"12. Baker agrees to pay Grower for the above corn when delivered and in addition thereto, agrees to pay storage fees, in and out charges, transportation charges, and the accrued interest on each bushel or cwt. of corn as delivered.

"13. It is further understood and agreed that if Baker, for any reason, fails, neglects, or refuses to pay Grower for said popcorn along with the heretofore specified charges at the time of delivery, then, and in that event, the remaining undelivered popcorn in Grower's possession shall, at Grower's option, be released by Baker for Grower to retain or dispose of as he sees fit."

The requirement for payment on delivery was made a part of the contract at defendant's request.

Some time in January, 1974, plaintiff telephoned defendant and asked that he begin delivery to the Stratford plant. The first truckload was delivered at about 5:00 P.M. on Saturday, February 2, by defendant and his employee, Boucher. Plaintiff's plant manager, Martin, gave a weight ticket to defendant. A second truckload was delivered on Monday, February 4, by Boucher. Martin gave a weight ticket to Boucher. On neither occasion did defendant or Boucher ask Martin for payment for the popcorn delivered and Martin did not offer to pay.

During the week of February 4, Martin telephoned defendant and asked when further deliveries would be made. Later that same week, plaintiff telephoned defendant and asked about the delay. Defendant told Martin and plaintiff that he was having equipment problems and that Boucher had been ill. In neither of the telephone conversations was there any discussion of payment. On Monday, February 11, defendant sent a written notice of termination of the contract claiming that plaintiff had breached the contract by failing to pay on delivery as required by paragraphs 12 and 13. Upon receipt of the notice of termination on or within a few days following February 12, plaintiff sent checks to defendant in payment for the two loads that had been delivered. After sending the notice of termination, defendant entered into a contract with a third party for the sale of the balance of the 1973 popcorn at a price of $8.00 per hundredweight. This contract was performed by defendant's delivery of 1,600,000 pounds of popcorn.

Martin testified that he made no payments for popcorn at

Stratford. The practice was that copies of weight tickets were sent to plaintiff's Garden City office where checks were written and mailed. At the time of defendant's two deliveries, Martin would accumulate weight tickets and send them to Garden City so that they would arrive on Monday mornings. He did not know when he had sent the weight tickets for the February 2 and 4 deliveries.

Defendant testified that at the time he made his contract to sell the balance of his 1973 crop to the third party, popcorn was selling for $8.00 and the commodity market price was between $7.00 and $7.25. He further testified that after the 1974 harvest popcorn was selling for around $14.00. Plaintiff testified that he had to pay $10.30 for some replacement popcorn. The trial court awarded damages of $52,000. This amount represents the value of 1,600,000 pounds at $3.25 per hundredweight, the difference between the parties' contract price of $4.75 and an $8.00 price.

The trial court's findings were in part as follows:

"2. That the defendant knew or should have known that the plaintiff's business office was located in Garden City, Kansas, and that in the normal course of events payment would be made from that office. That Garden City, Kansas, is on a direct route from the plaintiff's grain receiving facilities in Stratford, Texas, to the defendant's farm and that nothing prevented the defendant or his agents, servants and employees from stopping off on their way back from delivering the grain and requesting payment or obtaining payment from plaintiff's business office in Garden City, Kansas. That the evidence discloses [sic] that any request for payment would have been promptly handled and that the plaintiff had ample funds with which to make the payment and the only reason payment was not made was the failure of the defendant to request it.

"3. That between the time that the contract for the production of the popcorn was entered into and the time for delivery the price of popcorn had risen sharply and that it was greatly to the defendant's financial advantage if he could in some way get out of his contract for the sale of popcorn.

. . . .

"The Court concludes that the parties are under a duty to deal fairly with each other in good faith and that the defendant breached this duty by declaring a termination of the contract upon a technical pretense and that therefore as a matter of law the plaintiff is entitled to recover the damages suffered.

"The Court further concludes that to interpret the contract to require immediate payment without request or demand upon delivery of the grain to the processing facility in Stratford, Texas, would result in an unconscionable and unenforceable contract and that the contract should not be so interpreted. . . ."

Defendant raises three issues on appeal.

First, defendant argues the district court erred in considering evidence extrinsic to the written contract in violation of the parol

evidence rule. Our consideration of defendant's argument is hindered by defendant's failure to specify what evidence was admitted and considered by the trial court in contravention of the parol evidence rule. The record before us reveals no objections by defendant to the admission of any evidence. K.S.A. 60-404 provides as follows:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

Our examination of the district court's journal entry of judgment does not indicate that the court permitted extrinsic evidence to contradict the terms of the contract between the parties. The applicable parol evidence rule is embodied in K.S.A. 84-2-202, which provides that written terms of a sales contract ". . . intended by the parties as a final expression of their agreement . . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement . . ." Defendant has not brought to our attention any evidence considered by the court of prior or contemporaneous agreements contradicting the express terms of the contract.

Defendant next contends that the district court erred in finding that defendant's termination of the agreement was a breach of his duty to perform and enforce the contract in good faith. Defendant argues that he was under no good faith obligation in terminating the contract and, even if he was, the termination was made in good faith.

K.S.A. 84-1-203 provides as follows:

"Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement."

K.S.A. 84-1-201(19) defines "good faith" as "honesty in fact in the conduct or transaction concerned."

Defendant maintains the good faith obligation of K.S.A. 84-1-203 is not applicable because termination of a contract is not "performance" or "enforcement" of a contract. Under the facts of this case, we disagree. The termination clause in paragraph 13 of the contract does not permit termination at will but only upon failure of plaintiff to pay on delivery. Defendant's right to terminate and retain or dispose of undelivered popcorn is an insepara-

ble incident of enforcement of substantive provisions of the contract. We believe that only tortured reasoning could exempt defendant's exercise of the termination clause from the good faith obligation of K.S.A. 84-1-203, and we decline to do so.

There was substantial competent evidence in the record to support the district court's finding that defendant had breached his obligation of good faith. His failure on delivery of either load of popcorn to the Stratford plant to demand payment, his failure in the subsequent telephone conversations with plaintiff and Martin to demand payment, and his hasty resale of the popcorn to another buyer at a price nearly double the contract price, provided the trial court with ample evidence upon which to find an absence of good faith. The finding was one of fact and is not to be overturned where supported by substantial competent evidence. *McGilbray v. Scholfield Winnebago, Inc.*, 221 Kan. 605, 561 P.2d 832.

Defendant's final argument is that the district court erred in employing the "unconscionability" concept of K.S.A. 84-2-302 as a device for interpreting the contract. Defendant maintains the district court misused the unconscionability concept to shape its view of the content of the contract. We cannot agree. The findings of the district court indicate only that the court determined defendant's interpretation of the contract would lead to an unconscionable result. The contract provision permitting termination upon failure to pay on delivery was subject to multiple permissible interpretations. Defendant's interpretation of the contract was not the one adopted by the court and therefore the court's statement as to unconscionability was dictum and we need not belabor the point. Even so, termination clauses which are exercisable upon minimal notice and are so one-sided as to lead to absurd results have been held to be unconscionable. See *Ashland Oil, Inc. v. Donahue*, 223 S.E.2d 433 (W.Va. 1976).

Plaintiff, as cross-appellant, cites as error the district court's computation of damages. Plaintiff argues the district court erred in refusing to permit evidence of a fluctuating market price for popcorn between $10.50 and $20.00 per hundredweight for the purpose of establishing plaintiff's damages.

Regardless of what may have been designated by the parties, the record fails to disclose any proffer of evidence by plaintiff to establish the $10.50 to $20.00 prices. K.S.A. 60-405 provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

The evidence supporting an $8.00 price was at least as substantial as any other price shown by the record. The question of the market price of the popcorn at the time of breach is one of fact and not to be overturned where supported by substantial competent evidence. *McGilbray v. Scholfield Winnebago, Inc.*, supra.

The measure of damages applied by the trial court, the difference between the contract price and the market price at the time plaintiff learned of defendant's nondelivery and repudiation, is a proper measure of damages and is the substance of K.S.A. 84-2-713.

The parties having failed to show prejudicial error, the judgment is affirmed.