682 F.2d 883
 34 UCC Rep.Serv. 166
 BILL'S COAL COMPANY, INC., and William D. Patch, Savanna Lee
Patch, Lloyd F. Burkdoll, Anna Faye Burkdoll, John E.
Burkdoll and Virginia L. Burkdoll, all the general partners
of and d/b/a Cherokee Coal Company, a general partnership,
Plaintiffs-Appellants,
v.
BOARD OF PUBLIC UTILITIES OF SPRINGFIELD, MISSOURI, d/b/a
City Utilities, and City of Springfield, Missouri,
Defendants-Appellees.
 Nos. 82-1297, 82-1303.
 United States Court of Appeals,
Tenth Circuit.
 July 6, 1982.
Rehearing Denied Aug. 9, 1982.
 
 Paul Scott Kelly, Jr., Kansas City, Mo. (George P. Coughlin of Gage & Tucker, Kansas City, Mo., and O. B. Johnston of Logan, Lowry, Johnston, Switzer & West, Vinita, Okl., with him on the brief), for plaintiffs-appellants.
 Stan P. Doyle, Tulsa, Okl. (Steven M. Harris and James C. Thomas, of Doyle & Holmes, Tulsa, Okl., Mark E. Gardner of Woolsey, Fisher, Whiteaker, McDonald & Ansley, and Turner White III of Springfield, Mo., with him on the brief), for defendants-appellees.
 Before BARRETT, McKAY and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Bill's Coal Company, Inc. and related parties ("Bill's Coal") appeal the trial court's order dissolving an injunction it previously had issued compelling the Board of Utilities of the City of Springfield, Missouri ("the Utility") to continue purchasing its coal requirements from Bill's Coal in accord with the long-term contract the Utility entered into with Bill's Coal in 1970, as amended, clarified, and restated in 1979. In March 1980 the Utility informed Bill's Coal it was invoking the contract's termination clause. Bill's Coal responded by bringing this diversity action charging the Utility with breach of contract, and requesting damages and injunctive relief.
 
 
 2
 With the parties' agreement, the trial court granted an injunction requiring both parties to perform under the contract pending further developments. The parties agreed to try the dispute to the court, which conducted the proceedings in three phases. At the end of the trial's second phase, the court granted the Utility's motion to dissolve the injunction because it found Bill's Coal had committed a bad faith breach and repudiation of the contract when it repeatedly urged an interpretation of the termination clause it knew was contrary to the parties' intent when they signed the 1979 contract amendment. Bill's Coal appealed the order dissolving the injunction, which it has a right to do even though the litigation has not yet ended. See 28 U.S.C. § 1292(a). We ordered the appeal accelerated and, in the interim, ordered the injunction restored.
 
 
 3
 As amended, the contract calls for Bill's Coal to furnish all coal the Utility requires for its operations, with a specified annual minimum of 495,000 tons, and a maximum of 605,000 tons. By the end of each calendar year, Bill's Coal must tell the Utility what price it will charge for the fiscal year beginning the following April 1. The termination clause provides that after receiving Bill's Coal's price quote, the Utility has until the end of March to solicit bids from other coal companies. If a company able to meet the contract specifications submits a bid at least 25% under Bill's Coal's price, the Utility can terminate its contract with Bill's Coal effective March 31; if the bid is at least 15% less, the effective date of termination will be the following March 31. The termination clause provides that if invoked, Bill's Coal can require the Utility to provide written evidence of the bid that allows it to terminate the contract.
 
 
 4
 The contract provides Bill's Coal is to quote its price F.O.B. its Garland, Kansas mine. The Utility then pays for transporting the coal to Springfield, Missouri. The trial court's "bad faith" finding arose with regard to language in the termination clause that requires the price comparison to be between Bill's Coal's quoted price and a competitor's "delivered price." Both Bill's Coal and the Utility agree they understood the comparison was to be between the price Bill's Coal quoted F.O.B. Garland plus the freight costs the Utility could expect to incur, and the price the competitor quoted plus the freight costs the Utility could expect to incur, i.e., in both cases the total costs delivered to the Utility's coal yard in Springfield. However, apparently with an eye toward possible litigation or compromise of various disagreements between the parties over contract terms, Bill's Coal, at its attorney's suggestion, took the "position"-which it maintained through the early stages of the litigation-that according to the contract, the Utility could not invoke the termination clause unless a competitor's bid plus the expected freight costs for delivery to Springfield was at least 15% less than Bill's Coal's price F.O.B. Garland, without any addition for freight costs from Garland. When Bill's Coal expressed that view to the Utility's general manager, the general manager rejected the interpretation and said if Bill's Coal maintained that position, he would "see them in court"-which he did.
 
 
 5
 After receiving Bill's Coal's price quote for the fiscal year commencing April 1, 1980, and the bids solicited from other coal companies, the Utility claimed the bids it received gave it a right to terminate its contract with Bill's Coal. It notified Bill's Coal it was exercising its right to terminate the contract effective March 31 of the subsequent year, 1981 (the 15% option). Apparently unsure of its position, the Utility simultaneously brought a declaratory relief action to determine its rights and obligations under the contract. Immediately thereafter, Bill's Coal filed suit, claiming the Utility had breached the contract, and the Utility raised the same charge in a counterclaim. The declaratory judgment action and the two breach of contract allegations were consolidated for trial in three phases: Phase I to interpret the 1979 amended and restated agreement; Phase II to determine whether either party was in breach; and Phase III to calculate any damages due.
 
 
 6
 The parties have agreed that Missouri law applies to this action. During discovery, Bill's Coal inadvertently gave the Utility a document setting forth the attorney's plan for adopting the "position" with respect to interpreting the termination clause. The Utility then added to its counterclaim a cause of action for breach of the obligation to act in good faith, which the Uniform Commercial Code (UCC) implies in all contracts. See 20A Mo.Ann.Stat. § 400.1-203 (Vernon).
 
 
 7
 At the end of Phase I of the trial, the court found that the termination clause was ambiguous and that the parties intended to compare Bill's Coal's price plus freight to Springfield with the price quoted by a competitor plus freight. At the end of Phase II of the trial, the court ordered the injunction dissolved, even though it found that Bill's Coal's occasional shipments of substandard coal were not a material breach of the contract, and that the Utility had not properly exercised the contract's termination clause-the only issues litigated other than the allegation based upon Bill's Coal's "position" on the bid price required for termination. The court lifted the injunction because it concluded that Bill's Coal's "position" was unjustified; that if the Utility had accepted the interpretation Bill's Coal asserted, the Utility would have found it virtually impossible to exercise the termination clause; and that Bill's Coal had adopted the "position" in bad faith. The court found that the plan was a breach of the good faith obligation and, furthermore, amounted to a repudiation of the contract because it manifested an intention not to abide by the terms of the contract. The trial court concluded that whether viewing the "position" either as a breach or a repudiation, the Utility was entitled to the remedy of cancelling the contract. Therefore, the court granted the Utility's motion to dissolve the injunction.
 
 
 8
 Bill's Coal raises three objections to the court's dissolution of the injunction because of a bad faith breach and repudiation. First, Bill's Coal contends Missouri courts have not and would not recognize a right of action based on a contracting party's failure to comply with the UCC's good faith obligation. Second, because the trial court found Bill's Coal's interpretation of the termination clause was "plausible,"[1] the court erred in concluding Bill's Coal had acted in bad faith. Third, even if Bill's Coal acted in bad faith and even if Missouri courts generally would recognize bad faith acts as a contract breach or repudiation, when the bad faith is limited to espousing an interpretation of the circumstances under which the other party can terminate the contract and does not interfere with the performance either party owes under the contract, that bad faith interpretation does not give the other contracting party a right to cancel the contract.
 
 
 9
 We do not address the first two arguments Bill's Coal makes since we agree that this type of bad faith behavior is not to be regarded as a contract breach or repudiation. In urging an interpretation of the termination clause it knew did not reflect the parties' intent, Bill's Coal did not affect either party's performance under the contract. A breach of a contract is a failure to provide the other party with the goods or services as the contract requires. See 20A Mo.Ann.Stat. §§ 400.2-601 to 608, 400.2-612; Restatement (Second) of Contracts §§ 235, 241, 243, 245 (1981). A repudiation is a party's manifestation that it is not going to provide those goods or services when they will be due at some future date. See 20A Mo.Ann.Stat. § 400.2-610; Restatement (Second) of Contracts § 250 (1981). The bad faith urging of a particular interpretation of a termination clause is neither a failure to perform contract obligations (breach) nor an indication those obligations will not be performed in the future (repudiation).
 
 
 10
 We can envision situations in which bad faith conduct might be actionable: for instance, if the Utility solicited bids from competing coal companies and Bill's Coal in some way coerced competitors into not submitting bids. That might constitute such a breach of Bill's Coal's good faith obligation as to allow the Utility to cancel the contract.[2] But the mere urging of a particular interpretation is quite different. If a seller's interpretation of a termination clause is ludicrous, the buyer should ignore it; if the interpretation might prevail in a court of law, the seller has a right to urge it. If the party that wishes to invoke the termination clause is unsure of the merits of the other party's interpretation, it can either accept that interpretation, rely on its own interpretation, or obtain a declaratory judgment as to the meaning of the contract language.
 
 
 11
 Since we have found the trial court erred in its application of the law on the only issue it found against Bill's Coal in Phase II of the trial, the injunction we ordered reinstated should be continued in effect. See Community Communications Co. v. City of Boulder, 630 F.2d 704, 708-09 (10th Cir. 1980) rev'd on other grounds, --- U.S. ----, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982); United States v. School Dist. of Ferndale, 577 F.2d 1339, 1350-51 (6th Cir. 1978).
 
 
 12
 Our review of the trial court's rulings has been restricted to the one issue treated in this opinion. We express no view on its other rulings in Phase I or II of the trial. The Utility raises questions in its motion for clarification and instructions concerning price to be paid and whether additional bond should be required. These should be addressed by the trial court after remand, in light of the conclusions in this opinion and the trial court's other rulings interpreting the contract.
 
 
 13
 The case is hereby remanded for further proceedings consistent with this opinion.
 
 
 14
 BARRETT, Circuit Judge, dissents, and will file a separate opinion at a later date.
 
 
 
 [1]
 By "plausible," the trial court probably concluded that a court might agree with the argument advanced by Bill's Coal that extrinsic evidence of the parties' intent was inadmissible since the contract words were unambiguous and that the words meant exactly what Bill's Coal claimed they meant. But we note that even if the clause were unambiguous, the Utility still would be entitled to introduce evidence of the parties' contrary intent in support of an action to have the writing reformed to reflect the parties' agreement. See, e.g., Williams v. United Ins. Co., 618 S.W.2d 229, 231 (Mo.App.1981)
 
 
 [2]
 The only case the Utility cites that recognizes a cause of action for bad faith in connection with a termination clause, Baker v. Ratzlaff, 1 Kan.App.2d 285, 564 P.2d 153 (1977), is distinguishable. Baker holds that a party invoking a clause permitting termination in the event of nonpayment committed a breach of the good faith obligation if the party did not first request payment. A party's taking such affirmative acts is quite different from a party's urging a particular interpretation of the termination clause