No. 66,771

DENIS V. TONGISH, *Appellee,* v. DANNY THOMAS, d/b/a NORTH-
WEST SEED, *Defendant,* and DECATUR COOP ASSOCIATION,
*Third-Party Intervenor/Appellant.*

(840 P.2d 471)

Opinion filed October 30, 1992.

*Charles A. Peckham,* of Brown, Creighton & Peckham, of Atwood, argued the cause and was on the briefs for third-party intervenor/appellant.

*H. Scott Beims,* of Lewis & Beims, of Atwood, argued the cause and was on the briefs for appellee.

*H. David Starkey,* of Lowe, Starkey & Gatz, of Colby, was on the brief for *amicus curiae* Kansas Grain and Feed Association.

The opinion of the court was delivered by

McFARLAND, J.: This case presents the narrow issue of whether damages arising from the nondelivery of contracted-for sunflower seeds should be computed on the basis of K.S.A. 84-1-106 or

K.S.A. 84-2-713. That is, whether the buyer is entitled to its actual loss of profit or the difference between the market price and the contract price. The trial court awarded damages on the basis of the buyer's actual loss of profit. The Court of Appeals reversed the judgment, holding that the difference between the market price and the contract price was the proper measure of damages (*Tongish v. Thomas,* 16 Kan. App. 2d 809, 829 P.2d 916 [1992]). The matter is before us on petition for review.

The pertinent facts are as follows. Denis Tongish entered into a contract on April 28, 1988, with the Decatur Coop Association (Coop) where Tongish agreed to grow 160 acres of sunflower seeds, said crop to be purchased by Coop at $13 per hundredweight for large seeds and $8 per hundredweight for small seeds. By agreement, the acreage was subsequently reduced to 116.8 acres. The crop was to be delivered in increments of one-third by December 31, 1988, March 31, 1989, and May 31, 1989.

Coop had a contract to deliver the seeds purchased to Bambino Bean & Seed, Inc. Coop was to be paid the same price it paid the farmers less a 55 cent per hundredweight handling fee. Coop's only anticipated profit was the handling fee.

In October and November 1988, Tongish delivered sunflower seeds to Coop. In January, a dispute arose over the amount of dockage charged against Tongish's seeds. Tongish's seeds were of higher quality than those of many other farmers selling to Coop, and Coop's practice of commingling seeds prior to sampling was disadvantageous to Tongish. This was resolved by Coop issuing an additional check to Tongish reflecting a lower dockage charge.

Due to a short crop, bad weather, and other factors, the market price of sunflower seeds in January 1989 was double that set forth in the Tongish/Coop contract. On January 13, Tongish notified Coop he would not deliver any more sunflower seeds.

In May 1989, Tongish sold and delivered 82,820 pounds of sunflower seeds to Danny Thomas for approximately $20 per hundredweight. Tongish was to receive $14,714.89, which was $5,153.13 more than the Coop contract price. Thomas paid for approximately one-half of the seeds. Tongish brought this action to collect the balance due. Thomas paid the balance of $7,359.61 into court and was ultimately dismissed from the action.

Meanwhile, Coop intervened in the action, seeking damages for Tongish's breach of their contract. Following a bench trial, the district court held that Tongish had breached the contract with no basis therefor. Damages were allowed in the amount of $455.51, which was the computed loss of handling charges. Coop appealed from said damage award. The Court of Appeals reversed the district court and remanded the case to the district court to determine and award damages pursuant to K.S.A. 84-2-713 (the difference between the market price and the contract price).

The analyses and rationale of the Court of Appeals utilized in resolving the issue are sound and we adopt the following portion thereof:

"The trial court decided the damages to Coop should be the loss of expected profits. Coop argues that K.S.A. 84-2-713 entitles it to collect as damages the difference between the market price and the contract price. Tongish argues that the trial court was correct and cites K.S.A. 84-1-106 as support for the contention that a party should be placed in as good a position as it would be in had the other party performed. Therefore, the only disagreement is how the damages should be calculated.

"The measure of damages in this action involves two sections of the Uniform Commercial Code: K.S.A. 84-1-106 and K.S.A. 84-2-713. The issue to be determined is which statute governs the measure of damages. Stated in another way, if the statutes are in conflict, which statute should prevail? The answer involves an ongoing academic discussion of two contending positions. The issues in this case disclose the problem.

"If Tongish had not breached the contract, he may have received under the contract terms with Coop about $5,153.13 less than he received from Danny Thomas. Coop in turn had an oral contract with Bambino to sell whatever seeds it received from Tongish to Bambino for the same price Coop paid for them. Therefore, if the contract had been performed, Coop would not have actually received the extra $5,153.13.

"We first turn our attention to the conflicting statutes and the applicable rules of statutory construction. K.S.A. 84-1-106(1) states:

'The remedies provided by this act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this act or by other rule of law.'

"If a seller breaches a contract and the buyer does not 'cover,' the buyer is free to pursue other available remedies. K.S.A. 84-2-711 and 84-2-712. One remedy, which is a complete alternative to 'cover' (K.S.A. 84-2-713, Official comment, ¶ 5), is K.S.A. 84-2-713(1), which provides:

'Subject to the provisions of this article with respect to proof of market price (section 84-2-723), the measure of damages for nondelivery or re-

pudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article (section 84-2-715), but less expenses saved in consequence of the seller's breach.'

"Neither party argues that the Uniform Commercial Code is inapplicable. Both agree that the issue to be determined is which provision of the UCC should be applied. As stated by the appellee: 'This is really the essence of this appeal, *i.e.*, whether this general rule of damages [K.S.A. 84-1-106] controls the measure of damages set forth in K.S.A. 84-2-713.' However, Tongish then offers no support that K.S.A. 84-1-106 controls over K.S.A. 84-2-713. The authority he does cite (*M & W Development, Inc. v. El Paso Water Co.*, 6 Kan. App. 2d 735, 634 P.2d 166 [1981]) is not a UCC case and K.S.A. 84-2-713 was not applicable.

"The statutes do contain conflicting provisions. On the one hand, K.S.A. 84-1-106 offers a general guide of how remedies of the UCC should be applied, whereas K.S.A. 84-2-713 specifically describes a damage remedy that gives the buyer certain damages when the seller breaches a contract for the sale of goods.

"The cardinal rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature govern. *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 971 (1990); *Cedar Creek Properties, Inc. v. Board of Johnson County Comm'rs*, 246 Kan. 412, 417, 789 P.2d 1170 (1990); and *Stauffer Communications, Inc. v. Mitchell*, 246 Kan. 492, Syl. ¶ 1, 789 P.2d 1153 (1990). When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears that the legislature intended to make the general act controlling. *State v. Wilcox*, 245 Kan. 76, Syl. ¶ 1, 775 P.2d 177 (1989). The Kansas Supreme Court stated in *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 353, 770 P.2d 423 (1989): 'General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling.'

"K.S.A. 84-2-713 allows the buyer to collect the difference in market price and contract price for damages in a breached contract. For that reason, it seems impossible to reconcile the decision of the district court that limits damages to lost profits with this statute.

"Therefore, because it appears impractical to make K.S.A. 84-1-106 and K.S.A. 84-2-713 harmonize in this factual situation, K.S.A. 84-2-713 should prevail as the more specific statute according to statutory rules of construction.

"As stated, however, Coop protected itself against market price fluctuations through its contract with Bambino. Other than the minimal handling

charge, Coop suffered no lost profits from the breach. Should the protection require an exception to the general rule under K.S.A. 84-2-713?

"In *Panhandle Agri-Service, Inc. v. Becker,* 231 Kan. 291, 292, 644 P.2d 413 (1982), a farmer agreed to sell 10,000 tons of alfalfa to the buyer for $45 per ton. At the time the seller breached the contract, the market price was $62 per ton. 231 Kan. at 293. The court found, pursuant to K.S.A. 84-2-713, that the damages amounted to $17 per ton or the difference between the market price and the contract price. The court stated: 'We find nothing which would justify the trial court in arriving at damages using loss of business profits which are consequential damages.' 231 Kan. at 298.

"In *Baker v. Ratzlaff,* 1 Kan. App. 2d 285, 564 P.2d 153 (1977), the seller contracted to sell all the popcorn planted on 380 acres for $4.75 per hundredweight. The seller breached, and the trial court found that the market price for popcorn was $8 per hundredweight when the buyer learned of the breach. The court held that the proper measure of damages would be the difference between the market price and the contract price as provided in K.S.A. 84-2-713. 1 Kan. App. 2d at 290.

"Neither *Panhandle* nor *Baker* involved a conflict between the two UCC provisions. The difference between the market price and the contract price placed the nonbreaching party in as good a position as that party would have been if the contract had been performed. The decisions can be distinguished from this case, however, in that Coop protected itself against market price fluctuations with the Bambino contract.

"There is authority for appellee's position that K.S.A. 84-2-713 should not be applied in certain circumstances. In *Allied Canners & Packers, Inc. v. Victor Packing Co.,* 162 Cal. App. 3d 905, 209 Cal. Rptr. 60 (1984), Allied contracted to purchase 375,000 pounds of raisins from Victor for 29.75 cents per pound with a 4% discount. Allied then contracted to sell the raisins for 29.75 cents per pound expecting a profit of $4,462.50 from the 4% discount it received from Victor. 162 Cal. App. 3d at 907-08.

"Heavy rains damaged the raisin crop and Victor breached its contract, being unable to fulfill the requirement. The market price of raisins had risen to about 80 cents per pound. Allied's buyers agreed to rescind their contracts so Allied was not bound to supply them with raisins at a severe loss. Therefore, the actual loss to Allied was the $4,462.50 profit it expected, while the difference between the market price and the contract price was about $150,000. 162 Cal. App. 3d at 908-09.

"The California appellate court, in writing an exception, stated: 'It has been recognized that the use of the market-price contract-price formula under section 2-713 does not, absent pure accident, result in a damage award reflecting the buyer's actual loss. [Citations omitted.]' 162 Cal. App. 3d at 912. The court indicated that section 2-713 may be more of a statutory liquidated damages clause and, therefore, conflicts with the goal of section 1-106. The court discussed that in situations where the buyer has made a resale contract for the goods, which the seller knows about, it may be appropriate to limit 2-713 damages to actual loss. However, the court cited

a concern that a seller not be rewarded for a bad faith breach of contract. 162 Cal. App. 3d at 912-14.

"In *Allied*, the court determined that if the seller knew the buyer had a resale contract for the goods, and the seller did not breach the contract in bad faith, the buyer was limited to actual loss of damages under section 1-106. 162 Cal. App. 3d at 915.

"The similarities between the present case and *Allied* are that the buyer made a resale contract which the seller knew about. (Tongish knew the seeds eventually went to Bambino, although he may not have known the details of the deal.) However, in examining the breach itself, Victor could not deliver the raisins because its crop had been destroyed. Tongish testified that he breached the contract because he was dissatisfied with dockage tests of Coop and/or Bambino. Victor had no raisins to sell to any buyer, while Tongish took advantage of the doubling price of sunflower seeds and sold to Danny Thomas. Although the trial court had no need to find whether Tongish breached the contract in bad faith, it did find there was no valid reason for the breach. Therefore, the nature of Tongish's breach was much different than Victor's in *Allied*.

"Section 2-713 and the theories behind it have a lengthy and somewhat controversial history. In 1963, it was suggested that 2-713 was a statutory liquidated damages clause and not really an effort to try and accurately predict what actual damages would be. Peters, *Remedies for Breach of Contracts Relating to the Sale of Goods Under the Uniform Commercial Code: A Roadmap for Article Two*, 73 Yale L.J. 199, 259 (1963).

"In 1978, Robert Childres called for the repeal of section 2-713. Childres, *Buyer's Remedies: The Danger of Section 2-713*, 72 Nw. U. L. Rev. 837 (1978). Childres reflected that because the market price/contract price remedy 'has been the cornerstone of Anglo-American damages' that it has been so hard to see that this remedy 'makes no sense whatever when applied to real life situations.' 72 Nw. U. L. Rev. at 841-42.

"In 1979, David Simon and Gerald A. Novack wrote a fairly objective analysis of the two arguments about section 2-713 and stated:

'For over sixty years our courts have divided on the question of which measure of damages is appropriate for the supplier's breach of his delivery obligations. The majority view, reinforced by applicable codes, would award market damages even though in excess of plaintiff's loss. A persistent minority would reduce market damages to the plaintiff's loss, without regard to whether this creates a windfall for the defendant. Strangely enough, each view has generally tended to disregard the arguments, and even the existence, of the opposing view.' Simon and Novack, *Limiting the Buyer's Market Damages to Lost Profits: A Challenge to the Enforceability of Market Contracts*, 92 Harv. L. Rev. 1395, 1397 (1979).

"Although the article discussed both sides of the issue, the authors came down on the side of market price/contract price as the preferred damages theory. The authors admit that market damages fly in the face 'of the familiar

maxim that the purpose of contract damages is to make the injured party whole, not penalize the breaching party.' 92 Harv. L. Rev. at 1437. However, they argue that the market damages rule discourages the breach of contracts and encourages a more efficient market. 92 Harv. L. Rev. at 1437.

"The *Allied* decision in 1984, which relied on the articles cited above for its analysis to reject market price/contract price damages, has been sharply criticized. In Schneider, *UCC Section 2-713: A Defense of Buyers' Expectancy Damages*, 22 Cal. W. L. Rev. 233, 266 (1986), the author stated that *Allied* 'adopted the most restrictive [position] on buyer's damages. This Article is intended to reverse that trend.' Schneider argued that by following section 1-106, 'the court ignored the clear language of section 2-713's compensation scheme to award expectation damages in accordance with the parties' allocation of risk as measured by the difference between contract price and market price on the date set for performance.' 22 Cal. W. L. Rev. at 264.

"Recently in Scott, *The Case for Market Damages: Revisiting the Lost Profits Puzzle*, 57 U. Chi. L. Rev. 1155, 1200 (1990), the *Allied* result was called 'unfortunate.' Scott argues that section 1-106 is 'entirely consistent' with the market damages remedy of 2-713. 57 U. Chi. L. Rev. at 1201. According to Scott, it is possible to harmonize sections 1-106 and 2-713. Scott states, 'Market damages measure the expectancy ex ante, and thus reflect the value of the option; lost profits, on the other hand, measure losses ex post, and thus only reflect the value of the completed exchange.' 57 U. Chi. L. Rev. at 1174. The author argues that if the nonbreaching party has laid off part of the market risk (like Coop did) the lost profits rule creates instability because the other party is now encouraged to breach the contract if the market fluctuates to its advantage. 57 U. Chi. L. Rev. at 1178.

"We are not persuaded that the lost profits view under *Allied* should be embraced. It is a minority rule that has received only nominal support. We believe the majority rule or the market damages remedy as contained in K.S.A. 84-2-713 is more reasoned and should be followed as the preferred measure of damages. While application of the rule may not reflect the actual loss to a buyer, it encourages a more efficient market and discourages the breach of contracts." *Tongish v. Thomas*, 16 Kan. App. 2d at 811-17.

At first blush, the result reached herein appears unfair. However, closer scrutiny dissipates this impression. By the terms of the contract Coop was obligated to buy Tongish's large sunflower seeds at $13 per hundredweight whether or not it had a market for them. Had the price of sunflower seeds plummeted by delivery time, Coop's obligation to purchase at the agreed price was fixed. If loss of actual profit pursuant to K.S.A. 84-1-106(1) would be the measure of damages to be applied herein, it would enable Tongish to consider the Coop contract price of $13 per

hundredweight plus 55 cents per hundredweight handling fee as the "floor" price for his seeds, take advantage of rapidly escalating prices, ignore his contractual obligation, and profitably sell to the highest bidder. Damages computed under K.S.A. 84-2-713 encourage the honoring of contracts and market stability.

As an additional argument, Tongish contends that the application of K.S.A. 84-2-713 would result in the unjust enrichment of Coop. This argument was not presented to the trial court.

Even if properly before us, the argument lacks merit. We discussed the doctrine of unjust enrichment in *J. W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 758 P.2d 738 (1988), stating:

"The basic elements on a claim based on a theory of unjust enrichment are threefold: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." 243 Kan. at 512.

Before us is which statutory measure of damages applies. This is not a matter of one party conferring a benefit upon another.

The judgment of the Court of Appeals reversing the district court and remanding the case for the determination and award of damages pursuant to the provisions of K.S.A. 84-2-713 is affirmed. The judgment of the district court is reversed.