FILED
United States Court of Appeals
Tenth Circuit

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

August 26, 2022

Christopher M. Wolpert
Clerk of Court

_____

ALLIANZ LIFE INSURANCE
COMPANY OF NORTH AMERICA,

    Plaintiff Counterclaim Defendant -
Appellee/Cross-Appellant,

v.

GENE L. MUSE, M.D.

    Defendant Counterclaimant -
Appellant/Cross-Appellee,

and

PATIA PEARSON,

    Defendant.

Nos. 20-6026, 20-6185 & 20-6186
(D.C. No. 5:17-CV-01361-G)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **LUCERO** and **MORITZ**, Circuit Judges.
_____

After falling from a ladder and sustaining injuries, Gene Muse filed a claim for

benefits under his long-term-care policy with Allianz Life Insurance Company of North

America. Allianz ultimately denied coverage and filed this action against Muse and his

caregiver, Patia Pearson, alleging that they conspired to defraud and deceive Allianz and

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

seeking a declaration that Muse was not entitled to benefits. Muse filed several counterclaims. After an order granting partial summary judgment to Allianz and a jury verdict in Muse's favor on the remaining claims, the parties appeal, challenging the summary-judgment order, two pretrial orders, and a posttrial order rejecting each parties' request for attorney fees. For the reasons that follow, we reverse in part, affirm in part, and remand for further proceedings.

**Background**

I.    **The Policy**

Muse purchased an insurance policy for long-term care (the Policy) from Allianz and paid all required premiums over a ten-year period. To be eligible for benefits under the Policy, an insured must be "certified as being Chronically Ill, which means," as relevant here, "being unable to perform, without Substantial Assistance, at least two Activities of Daily Living [ADLs] for a period of at least 90 days due to loss of functional capacity."[1] App. vol. 1, 55. ADLs are Bathing, Continence, Dressing, Eating, Toileting, and Transferring, each of which is defined under the Policy. And "Substantial Assistance means hands-on or stand-by assistance of another person without which [the insured] would be unable to perform the [ADLs]." *Id.* (formatting omitted).

If an insured is eligible for benefits, the Policy provides Daily Benefits in the amount of $358.27, adjusted each year for inflation, for what it terms "Home and Community Services." *Id.* at 47. As relevant here, one type of Home and Community

---

[1] The Policy capitalizes defined terms. We follow the same convention.

Service is "Home Care," which "is a program of services provided . . . through a Home Health Care Agency," including both "care by a Home Health Aide" and "homemaker services." *Id.* at 53 (formatting omitted). In turn, a "Home Health Aide is a person . . . who provides[] Maintenance or Personal Care" (among other services) "under the supervision of a Home Health Care Agency" and who is "duly licensed or certified under state law." *Id.* (formatting omitted). And "Maintenance or Personal Care . . . is any care provided primarily to give needed assistance" that results from "being Chronically Ill." *Id.* at 54 (formatting omitted).

Also relevant to this appeal, the Policy contains certain limitations and exclusions, including a provision excluding coverage for services for which an insured has "no financial liability or that is provided at no charge in the absence of insurance." *Id.* at 58. Muse also purchased an Indemnity Benefit Rider that forms part of the Policy. The rider provides that the payable benefit amount "will be equal to the full Daily Benefit shown in the Benefit Information section of the Benefit Schedule, regardless of actual charges incurred." *Id.* at 50. It further states that "[a]ll definitions, provisions, limitations, and exceptions of the Policy apply to [the] rider unless changed by [the] rider." *Id.*

## II.     The Accident and Insurance Claim

The events giving rise to this lawsuit started when Muse fell from a ladder, resulting in multiple injuries to his left foot, right knee, and both hands. After the accident, Muse closed his orthopedic-surgery practice and hired Pearson, a long-time friend and former romantic partner, to be his live-in caregiver. After Muse learned that the Policy required care to be provided by a Home Health Aide licensed under

3

state law, Pearson took courses to become a certified Home Health Aide and obtained her certification from the Oklahoma State Department of Health. Muse then initiated a claim under the Policy, with the assistance of counsel, seeking Home and Community Service benefits for Home Care provided by Pearson. Muse advised Allianz that he was unable to perform several ADLs and provided a medical statement from his surgeon, Houshang Seradge.

Allianz subsequently informed Muse that Home Care must be provided by an employee of a healthcare facility, not an independent contractor. Pearson then arranged to provide her services under the supervision of AdLife HomeCare, LLC,[2] a licensed Home Health Care Agency, to comply with the Policy terms. Allianz then determined that Muse was eligible to receive benefits for Home Care Services provided by Pearson and AdLife from July 1, 2015, to January 26, 2016.

Soon after, a dispute arose as to whether Muse was Chronically Ill, as required to qualify for benefits under the Policy. Unbeknownst to Muse, Allianz had flagged Muse's claim for potential fraud and conducted video surveillance to determine if Muse's physical capabilities matched the documentation prepared by AdLife indicating that Muse needed assistance with several ADLs. According to Allianz, the video surveillance showed Muse engaging in various ADLs without assistance. As a result, Allianz concluded Muse was not Chronically Ill as of November 23, 2015, and

---

[2] At some point, AdLife changed its name to either Alpha Private Services or Alpha Home Health Care Services and Hospice Care. We follow the parties' convention of referring to the company as "AdLife."

4

informed Muse that no further benefits would be provided for Home Care Services on or after that date.

Muse appealed and submitted additional medical information in support of his claim. After a lengthy back and forth, during which time Allianz requested additional information and arranged for an in-home nursing assessment, Allianz reversed its decision and reinstated Muse's Home Care Benefits from November 23, 2015, to January 1, 2016.

After reversing its decision to deny benefits, Allianz conducted another round of surveillance, which purportedly showed Muse walking and engaging in other physical activities without assistance. Subsequently, in response to a request from Allianz, Seradge provided Allianz with a Chronically Ill statement indicating that Muse was able to independently perform the ADLs of Ambulation, Eating, and Transferring. But Seradge stated that he "[did] not know" if Muse needed assistance with Bathing, Continence, Dressing, and Toileting. App. vol. 3, 518. Shortly thereafter, Muse informed Allianz that he was treating with new physicians and Allianz should receive a report from Christopher Bouvette certifying that Muse needed stand-by assistance with the ADLs of Ambulation and Transferring and hands-on assistance with the ADLs of Bathing, Continence, Dressing, Eating, and Toileting.

After receiving Seradge's Chronically Ill statement, Allianz notified Muse that Allianz would not approve Muse's Home Care benefits after April 21, 2017, because Seradge had not certified Muse as being Chronically Ill. Muse appealed and

resubmitted Bouvette's report that certified Muse as being Chronically Ill. Allianz

subsequently informed Muse that there was "conflicting medical evidence" as to

whether Muse was Chronically Ill, which Muse disputed. App. vol. 6, 1496. Allianz

filed this lawsuit prior to resolving Muse's second appeal.

## III.    The Lawsuit

Allianz sued Muse and Pearson for fraud and conspiracy to defraud. Allianz

also sought recovery for benefits it asserted were improperly paid and a declaratory

judgment that Muse was not entitled to additional benefits for services provided after

April 22, 2017. Muse denied these allegations and counterclaimed for breach of

contract, breach of the duty of good faith and fair dealing, fraud, and intentional

infliction of emotional distress.[3] The district court dismissed Muse's claims for fraud

and intentional infliction of emotional distress, a ruling Muse does not challenge on

appeal.

Allianz then moved for partial summary judgment, and the district court

granted that motion in part. As relevant here, the district court ruled that Allianz was

entitled to a declaratory judgment that Home Health Care Services rendered by

Pearson from April 22, 2017, to March 30, 2018, were not covered by the Policy.[4] It

---

[3] Pearson also filed counterclaims, which the district court dismissed. Pearson's counterclaims are not at issue in this appeal.

[4] This end date came from Muse's pending claims with Allianz; at the time Allianz filed suit, Muse had submitted claims for services provided through March 30, 2018.

further agreed with Allianz that Muse's bad-faith counterclaim failed as a matter of law.

Allianz subsequently filed two motions in limine. The first sought to prevent Muse from presenting evidence of damages for time periods during which he was ineligible for benefits. The second sought to prevent Muse from asserting a claim for anticipatory repudiation on the ground that Muse was improperly asserting such claim on the eve of trial. The district court ruled in Allianz's favor on both issues. First, the district court prohibited Muse from presenting evidence of damages relating to time periods for which the district court had ruled Muse was ineligible for benefits. The district court also prohibited Muse from presenting evidence of damages for the loss of future benefits because it found that the loss of future benefits was too speculative. Second, the district court found that because Muse's newly asserted anticipatory-repudiation counterclaim failed as a matter of law, Muse could not present evidence of damages based on an anticipatory-repudiation theory. After these rulings, Muse acknowledged that nothing remained of his breach-of-contract counterclaim and omitted it from the pretrial report.

Allianz's fraud and conspiracy claims proceeded to trial, and the jury found in favor of Muse and Pearson. The district court subsequently entered judgment in favor of Muse and Pearson on Allianz's fraud and conspiracy claims, and—referring back to its summary-judgment order—in favor of Allianz on its declaratory-relief claim and Muse's bad-faith counterclaim. The district court later denied both parties' motions seeking attorney fees.

7

Both parties appealed various portions of the district court's orders, and we consolidated their appeals. In Appeal No. 20-6026, Muse challenges the order granting partial summary judgment to Allianz and the two orders granting Allianz's motions in limine. In Appeal No. 20-6185, he challenges the order denying him attorney fees. Allianz cross-appeals in Appeal No. 20-6186, asserting that the district court's summary-judgment order did not grant Allianz the full declaratory relief to which it was entitled and that the district court erroneously denied Allianz's request for attorney fees.

## Analysis

The parties raise a variety of issues and arguments, some of which overlap in various ways. In the interest of organizational clarity, we structure our opinion around the four orders being appealed: summary judgment, two motions in limine, and the attorney-fees order. Because "our jurisdiction is based on diversity of citizenship, 'we apply the substantive law of the forum state,'" which in this case is Oklahoma. *Auto-Owners Ins. Co. v. Csaszar*, 893 F.3d 729, 734 (10th Cir. 2018) (quoting *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015)).

### I.    Summary Judgment

The parties first challenge the district court's summary-judgment order: Muse contends Allianz is not entitled to summary judgment at all, and Allianz contends that the district court should have granted even broader relief. We generally "review a district court's decision to grant summary judgment de novo, applying the same legal standard the district court used." *Edens v. Neth. Ins. Co.*, 834 F.3d 1116, 1120

(10th Cir. 2016) (quoting *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1277 (10th Cir. 2011)). Summary judgment is warranted when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting this inquiry, "[w]e view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1314 (10th Cir. 2019) (alteration in original) (quoting *Teets v. Great-W. Life & Annuity Ins. Co.*, 921 F.3d 1200, 1211 (10th Cir. 2019)).

And when, like here, a party also challenges certain related rulings regarding the pleadings and the district court's overall supervision of litigation, we review such rulings for an abuse of discretion. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998) (explaining that issues involving "supervision of litigation" are reviewed for abuse of discretion (quoting *Pierce v. Underwood*, 487 U.S. 552, 558 n.1 (1988))); *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007) (reviewing decision on amendment of pleadings for abuse of discretion). Under this standard, we will reverse if the ruling is arbitrary, capricious, whimsical, or manifestly unreasonable; if the ruling constitutes a clear error of judgment; or if the ruling exceeds the bound of permissible choice in the circumstances. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

**A.    Allianz's Claim Seeking a Declaratory Judgment That Muse Is Not Entitled to Coverage**

Allianz's declaratory-relief claim sought to establish Muse's lack of coverage beginning on April 22, 2017. At the summary-judgment stage, the district court divided the relevant time period into two sections—April 22 to December 31, 2017, and January 1 to March 30, 2018—and agreed with Allianz that Muse was not entitled to benefits during either time period. We likewise consider each time period in turn.

**1.    April to December 2017**

As to this time period, the district court agreed with Allianz that the Policy's financial-liability exclusion precluded coverage. That exclusion provides that "[n]o benefits will be paid for any confinement, care, treatment, or service(s) . . . for which [the insured has] no financial liability or that is provided at no charge in the absence of insurance." App. vol. 1, 58. And because the district court agreed with Allianz that Muse did not have financial liability for Pearson's services during this time period, it determined that the exclusion applied to bar coverage. Additionally, the district court rejected Muse's procedural argument that Allianz had waited too long to assert the exclusion as a reason to deny coverage.

On appeal, Muse first reasserts his procedural argument. Specifically, he argues that the complaint's scattered references to the exclusion failed to adequately apprise him that Allianz's declaratory-relief claim turned on the exclusion. Moreover, Muse asserts that the exclusion was not mentioned during the "years-long claim-handling period." Aplt. Br. 17. As a result, Muse contends that he was unfairly

10

prejudiced because his discovery was aimed at defending against the allegations contained in the complaint, which specifically alleged Muse's ability to perform ADLs as a basis for entry of declaratory judgment.

But we see no abuse of discretion in the district court's rejection of this argument. *See Beaird*, 145 F.3d at 1164. To be sure, Allianz's more clearly stated basis for its declaratory-relief claim was video evidence purportedly showing that Muse had misrepresented his physical capabilities. But the district court accurately observed that Allianz did reference the exclusion in the complaint and then incorporated such reference into its declaratory-relief claim. The district court also noted the complaint's allegation that Muse falsely told Allianz that he had "incurred actual expenses in receiving care from Pearson when he did not do so." App. vol. 8, 1644 (quoting App. vol. 1, 40). It is not unreasonable to conclude that Muse could infer from these references that Allianz's declaratory-relief claim turned, at least in part, on the exclusion. Moreover, contrary to Muse's argument on appeal, the record also demonstrates that Allianz referenced the exclusion at least once prior to litigation, warning Muse that he would not receive benefits if he did not incur financial liability. Thus, under these circumstances, we cannot conclude that the district court's ruling on Muse's procedural objection was arbitrary, capricious, whimsical, or manifestly unreasonable. *See Nacchio*, 555 F.3d at 1241.

We turn next to Muse's substantive challenge to the district court's ruling that the exclusion bars coverage for Pearson's services from April to December 2017. On this point, Muse contends that the rider to the Policy either supersedes the exclusion

11

or renders it ambiguous, such that his financial liability does not affect coverage. This argument requires us to interpret the Policy. In so doing, we follow the parties' lead and assume that the Policy is governed by Oklahoma law. *See Mansur v. PFL Life Ins. Co.*, 589 F.3d 1315, 1319 (10th Cir. 2009).

Oklahoma courts view insurance policies as contracts and interpret them as such. *Haworth v. Jantzen*, 172 P.3d 193, 196 (Okla. 2006). Importantly, however, the Oklahoma Supreme Court has observed that insurance policies are adhesion contracts. *Spears v. Shelter Mut. Ins. Co.*, 73 P.3d 865, 868 (Okla. 2003). Adhesion contracts are standardized contracts, prepared by one party for acceptance by the other, offered "on a 'take it or leave it' basis." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 864 (Okla. 1996) (quoting *Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1226 (Okla. 1988)). Because of the adhesive nature of insurance policies and concerns that "ambiguous clauses or carefully drafted exclusions should not be permitted to serve as traps for policy holders," Oklahoma courts apply the reasonable-expectations doctrine when an insurance policy is ambiguous or "contains exclusions masked by technical or obscure language." *Id.* at 870.

This analysis begins by assessing the insurance contract for ambiguity. *See Spears*, 73 P.3d at 868 (noting that reasonable-expectations doctrine "evolved as an interpretive tool to aid courts in discerning the intention of the parties . . . when the policy language is ambiguous" (citation omitted)). As in other contexts, "[a]n insurance contract is ambiguous if it is reasonably susceptible to more than one interpretation." *Nat'l Am. Ins. Co. v. New Dominion, LLC*, 499 P.3d 9, 16 (Okla.

2021). If that is the case, we then apply the reasonable-expectations doctrine, under which "the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean." *Spears*, 73 P.3d at 868. In addition, we construe any ambiguity "strictly against the insurer and in favor of the insured." *Spears*, 73 P.3d at 868; *see also New Dominion*, 499 P.3d at 16 ("Ambiguities are construed against the insurer and in favor of the insured." (quoting *Broom v. Wilson Paving & Excavating, Inc.*, 356 P.3d 617, 629 (Okla. 2015))).

Although the district court did not consider the rider (despite Muse's repeated references to it in his summary-judgment briefing), we begin there because it "is part of [the] Policy" and it forms the basis of Muse's appellate argument (which he also made below). App. vol. 1, 50. In relevant part, the rider provides that "[i]f [the insured] meet[s] the Payment of Benefits provision under the Policy, the benefit amount payable . . . for covered services will be equal to the full Daily Benefit shown in the Benefit Information section to the Benefit Schedule, *regardless of actual charges incurred by* [*the insured*]." *Id.* (emphasis added).

According to Muse, the rider supersedes the financial-liability exclusion, which would otherwise preclude benefits "for any confinement, care, treatment, or service(s) . . . *for which* [*the insured*] *ha*[*s*] *no financial liability or that is provided at no charge in the absence of insurance*." *Id.* at 58 (emphasis added). In support, Muse points out that the rider alters certain provisions of the Policy because the rider states that the "definitions, provisions, limitations, and exceptions of the Policy apply

13

to this rider *unless changed by this rider*." *Id.* at 50 (emphasis added). And Muse argues that he reasonably understood the "regardless of actual charges incurred" language in the rider to alter the Policy such that his Home and Community Services Benefit no longer hinged on whether he had financial responsibility for covered services (that is, whether he incurred any "actual charges"). *Id.* And because the terms of the rider control, Muse contends, he only needs to show that he received care to earn the full Daily Benefit; his financial liability for such care is irrelevant.

In response, Allianz highlights a different portion of the rider's substantive language: the opening phrase "[i]f [the insured] meet[s] the Payment of Benefits provision under the Policy." *Id.* The Payment of Benefits provision, in turn, provides that the insured "will receive benefits if . . . [the insured] receive[s] services covered under this Policy" and if the "claim is not subject to any limitation or exclusion contained in this Policy." *Id.* at 55–56. And because Allianz asserts that Pearson's services fit within the financial-liability exclusion (based on deposition testimony purportedly revealing that Muse did not have to pay AdLife for Pearson's services in the absence of insurance coverage), Allianz reasons that Muse did not receive covered services under the Payment of Benefits provision and the rider's provision for benefits "regardless of actual charges" has no application. *Id.* at 50.

Allianz further attempts to explain when the rider's phrase "regardless of actual charges" does apply. According to Allianz, that phrase should not be read—as Muse suggests—to modify the financial-liability exclusion. Rather, Allianz contends such phrase only modifies the Home and Community Services Benefit provision.

14

That provision states, "[p]ayment will be the *actual* Home and Community Services charges [the insured] incur[s]." *Id.* at 57 (emphasis added). And Allianz asserts that the rider changes the payment amount from the "actual" charges incurred to the "full Daily Benefit." *Id.* at 50, 57. That is, according to Allianz, when the Policy is read as a whole with the rider, it provides that "as long as Muse has *some* genuine financial liability for services that are otherwise covered, he is entitled to the full Daily Benefit even if the *amount* of the charges he incurs is less than the Daily Benefit."[5] Aplee. Br. 20–21.

Each of these interpretations is reasonable. Muse's interpretation is reasonable because the rider indicates that Muse is entitled to the "full Daily Benefit . . . regardless of actual charges incurred." App. vol. 1, 50. So although the financial-liability exclusion states that coverage does not include services for which there is "no financial liability," it is reasonable to interpret these provisions (both of which concern financial issues) to conflict, in which case the rider controls. *Id.* at 58. Yet one could also interpret the rider as Allianz suggests: that the "regardless of actual charges incurred" language does not apply unless Muse first meets the Payment of Benefits provision, which precludes benefits if Muse is subject to the financial-

---

[5] Allianz asserts that no Oklahoma court has addressed a similar provision and instead relies on two out-of-circuit cases that it asserts "have interpreted similar exclusions." Aplee. Br. 23. These nonbinding cases are inapposite, however, because although they interpret and apply financial-liability exclusions, they do not involve a rider that potentially supersedes such an exclusion. *See Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.3d 698, 701 (7th Cir. 1991); *United States v. St. Paul Mercury Indem. Co.*, 238 F.2d 594, 598 (8th Cir. 1956).

liability exclusion; and that the rider instead applies when an insured incurs some charges, but less than the full Daily Benefit. *See id.* at 50. We therefore agree with Muse that the Policy and rider, read together, are "reasonably susceptible to more than one interpretation" and are therefore ambiguous. *New Dominion*, 499 P.3d at 16.

Because we are faced with an ambiguity, we apply the reasonable-expectations doctrine and construe that ambiguity in favor of Muse, the insured. *See New Dominion*, 499 P.3d at 16. In doing so, we do not consider what Allianz (as the drafter) intended the language to mean, "but what a reasonable person [in Muse's position] would have understood it to mean." *Spears*, 73 P.3d at 868. After carefully reviewing the Policy, as modified by the rider, we conclude that a reasonable person in Muse's position would have understood that he was entitled to Home and Community Services Benefits "regardless of" whether he incurred "actual charges." App. vol. 1, 50. We do so in part because the rider refers directly to an insured's "actual *charges*," *id.* (emphasis added)—language that a reasonable insured would easily relate back to a financial-liability exclusion that applies to services "provided at *no charge*," *id.* at 58 (emphasis added). By contrast, Allianz's proposed interpretation is not similarly straightforward. According to Allianz, the rider *only* modifies the Home and Community Services Benefit provision. But notably, the rider does not specifically mention that provision. Instead, Allianz's interpretation would require an insured to follow a complicated and convoluted series of cross-references

16

to reach the Home and Community Services Benefit provision.[6] While a lawyer trained in drafting contracts *may* be able to reach this conclusion, Allianz cannot expect a reasonable insured to reach the same conclusion. *See Spears*, 73 P.3d at 868 (stating that under reasonable-expectations doctrine, "the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean"); *New Dominion*, 499 P.3d at 16 (explaining that for ambiguous insurance contract, question is "whether an insured could have reasonable expected coverage under its terms"); *cf. Haworth*, 172 P.3d at 196 (explaining that ambiguity is measured "from the standpoint of a reasonably prudent layperson, not from that of a lawyer"). Thus, construing the ambiguity in Muse's favor and in the way a reasonable insured would have understood it, the rider modified the Policy such that Muse's financial liability for services does not impact coverage.

This determination comports with two important contract-interpretation principles articulated in Oklahoma contract law. First, and most critically, if an insurer desires to limit policy coverage, it must use clear and unambiguous language.

---

[6] Specifically, the insured must first follow the rider's reference to the Payment of Benefits provision, and then follow the reference in the Payment of Benefits provision to "services covered under this Policy." App. vol. 1, 55. The phrase "services covered under this Policy" is not defined, but the insured must nevertheless find his or her way from there to the Home and Community Services Benefit provision, which states that "[p]ayment will be the *actual* Home and Services charges you incur." App. vol. 1, 57 (emphasis added). The insured must then understand that the rider only modifies this provision so long as the insured incurs *some* charges (even though the Policy never states this explicitly).

*E.g.*, *Haworth*, 172 P.3d at 197 ("When an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctively reveals its stated purpose."); *Spears*, 73 P.3d at 868 ("[I]f an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctly reveals its stated purpose."); *MTI, Inc. v. Emps. Ins. Co. of Wausau*, 913 F.3d 1245, 1250 (10th Cir. 2019) ("Under Oklahoma law, it is the responsibility of the insurer desiring to limit liability to employ clear language in the contract."). Allianz has not done so here. Had Allianz desired to ensure that the financial-liability exclusion clearly and unambiguously applied to insureds who purchased the rider, Allianz could have drafted the Policy to that effect. But as written, the applicability of the exclusion in light of the rider is ambiguous.

Second, Allianz's proffered interpretation could lead to absurd results, which we seek to avoid when interpreting contracts under Oklahoma law. *See Wiley v. Travelers Ins. Co.*, 534 P.2d 1293, 1295–96 (Okla. 1974) ("The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result."); Okla. Stat. tit. 15, § 154 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."). For example, under Allianz's proffered interpretation, if Muse incurred charges in the amount of $0.01, he would be entitled to coverage in the amount of the full Daily Benefit. But if he incurred zero charges, he would not. That is because, according to Allianz, when the Policy is read as a whole with the rider, it provides

18

that so long as Muse has *some* genuine financial liability for services that are otherwise covered—*even .01*—he is entitled to the full Daily Benefit even if the *amount* of the charges he incurs is less than the Daily Benefit. Simply stated, a reasonably prudent layperson wouldn't interpret the Policy to lead to such an absurd and unfair result.

For these reasons, we reverse the district court's order granting Allianz summary judgment on its declaratory-judgment claim as it pertains to Muse's coverage from April to December 2017. Because we reverse on the basis of Policy ambiguity, we do not reach Muse's additional argument that material disputed facts precluded summary judgment.

Our holding on this issue also disposes of Allianz's argument on cross-appeal that the district court erred by not granting Allianz the full declaratory relief to which it was entitled. That is because Allianz's cross-appeal argument hinges entirely on its position that the rider doesn't render the financial-liability exclusion ambiguous. Briefly summarized, Allianz asserts that after it moved for partial summary judgment, it received documents from AdLife indicating that Muse was only liable to pay AdLife upon receiving payment from Allianz; it also heard deposition testimony to the same effect. According to Allianz, this evidence demonstrated that Muse *never* had financial liability for care provided by a Home Health Care Agency in the absence of insurance. Thus, Allianz believed that the financial-liability exclusion applied to bar Muse's coverage entirely. It accordingly sought to expand its summary-judgment request to seek broader relief: Rather than a declaration that

19

Muse was not entitled to coverage as of April 22, 2017, Allianz requested a declaration that "Muse is not entitled to any benefits under the [P]olicy for caregiver services provided in the past." Aplee. Br. 39 (emphasis omitted) (quoting App. vol. 8, 1577). The district court denied Allianz's motion to supplement as moot in light of its ruling in favor of Allianz.

Allianz argues on cross-appeal that the motion to supplement was not moot because it sought a declaration of no coverage at any time and the district court found no coverage beginning on April 22, 2017. But we need not address this argument because it relies on the premise that the financial-liability exclusion is valid and unambiguous. We have concluded otherwise, holding that the rider renders the exclusion ambiguous and inapplicable, such that Muse's entitlement to coverage does not hinge on his financial liability. We therefore reject Allianz's cross-appeal arguments on this issue.

### 2.      January to March 2018

For this time period, the district court found that Muse was not entitled to coverage because (1) the Policy required the caregiver to be under the supervision of a Home Health Care Agency and (2) the record did not reasonably support a finding that Pearson was working for a Home Health Care Agency during this time. In support, the district court noted that, per Pearson's and Muse's own testimony, "undisputed evidence reflects that Pearson quit working for Ad[L]ife no later than January 2018 and began receiving monthly payments directly from Muse for services starting that same month." App. vol. 8, 1646.

20

On appeal, Muse first asserts a procedural objection, arguing that he did not receive fair notice that Allianz would rely on these facts to deny coverage. In support, he notes that Allianz first raised Pearson's status as a Home Health Aide as grounds for declaratory relief in its summary-judgment reply, where it argued that Pearson was classified as an independent contractor by AdLife, was not supervised by AdLife, and was paid directly by Muse beginning in January 2018.

"Whether a non[]moving party has had an opportunity to respond to a moving party's reply brief at the summary judgment stage is a 'supervision of litigation' question that we review for abuse of discretion." *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191–92 (10th Cir. 2006) (quoting *Beaird*, 145 F.3d at 1164–65). Our precedent "requires only that 'if the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials.'" *Id.* at 1192 (quoting *Beaird*, 145 F.3d at 1165). The district court did not violate that principle here: Muse had an opportunity to seek leave of court to file a surreply during the more than two months between Allianz's October 8, 2019 reply and the district court's December 18, 2019 order, but he failed to do so. *See id.* (finding district court did not abuse its discretion when nonmovant had opportunity to respond to new exhibits attached to summary-judgment reply brief by filing surreply during approximately 90 days between reply and decision, but nonmovant never attempted to do so). Therefore, the district court did not abuse its discretion by relying on the arguments raised in Allianz's reply brief.

21

Next, Muse argues that, as a substantive matter, the deposition testimony cited by the district court does not establish that Pearson failed to meet the Policy's requirements. Although Muse conceded below that Pearson quit working for AdLife in January 2018, he asserts on appeal that the Policy only requires a Home Health Aide be *supervised* in some nonspecific fashion by a Home Health Care Agency, not *employed* by that agency. And because the deposition testimony only speaks to Pearson's employment status and Muse's direct payments to Pearson, Muse argues such testimony does not establish that Pearson was unsupervised. But Muse offers no evidence that Pearson—despite severing her employment with AdLife and being paid directly by Muse—*was* supervised by AdLife (or another Home Health Care Agency).[7] *See* Fed. R. Civ. P. 56(c)(1); *Ezell v. BNSF Ry. Co.*, 949 F.3d 1274, 1278 (10th Cir. 2020) (explaining that once moving party identifies lack of genuine issue of material fact, burden shifts to nonmoving party to cite specific facts in record showing genuine issue of material fact). Muse has therefore failed to demonstrate a question of material fact as to whether Pearson's services from January to March

---

[7] Muse also argues he should prevail because "the issue of Pearson's independent[-]contractor status and supervision was fully fleshed out at trial" and the jury rendered a verdict in favor of Muse and Pearson. Aplt. Br. 34. Muse's argument is unavailing because Allianz's declaratory-judgment claim was not before the jury; the jury's verdict on Allianz's fraud claims sheds no light on the underlying issue of whether Pearson's services satisfied the Policy's coverage provisions. Moreover, our review of a summary-judgment order "is limited to the summary[-]judgment record before the district court when the motion was decided." *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016) (quoting *W. Coast Life Ins. Co. v. Hoar*, 558 F.3d 1151, 1157 (10th Cir. 2009)). And Muse offers no authority that would allow us to go outside that record simply because a jury subsequently rendered a verdict on other claims.

22

2018 were covered under the Policy, and the district court did not err in granting summary judgment to Allianz on its claim for a declaration that Muse was not entitled to coverage during this time period.

### B.    Muse's Bad-Faith Counterclaim

Muse also challenges the district court's decision to grant summary judgment to Allianz on his bad-faith counterclaim. The essential elements for a bad-faith claim under Oklahoma law are:

> (1) the insured was covered under the insurance policy issued by the insurer and . . . the insurer was required to take reasonable actions in handling the claim; (2) the actions of the insurer were unreasonable under the circumstances; (3) the insurer failed to deal fairly and act in good faith toward the insured in their handling of the claim; and (4) the breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by the insured.

*Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 746–47 (Okla. 2021). The party asserting a bad-faith claim must plead each element and carries the burden of proof. *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 761 (Okla. 1984).

The district court found that Muse could not meet the first element in light of its declaratory-judgment ruling that Muse was not entitled to benefits after April 22, 2017. Because we partially reverse the district court's declaratory-judgment ruling, its rationale for denying Muse's bad-faith claim cannot stand. We therefore also reverse the district court's ruling on the bad-faith counterclaim. In so doing, we do not address the parties' various arguments about the ways Allianz did or did not act in bad faith, leaving those matters for the district court to consider in the first instance. *See Maestas v. Lujan*, 351 F.3d 1001, 1016 (10th Cir. 2003).

23

## II.     Other Pretrial Rulings

Muse argues that the district court erroneously granted Allianz's motions in limine, thereby precluding him from asserting an anticipatory-repudiation claim and presenting various evidence of damages for certain time periods. "We review a district court's rulings on evidentiary matters and motions in limine for abuse of discretion." *Sundance Energy Okla., LLC v. Dan D. Drilling Corp.*, 836 F.3d 1271, 1279 (10th Cir. 2016) (quoting *Seeley v. Chase*, 443 F.3d 1290, 1293 (10th Cir. 2006)). We nevertheless review legal questions, including the district court's interpretation of state law, de novo. *See Phila. Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1336–37 (10th Cir. 2017).

### A.     Muse's Theory of Anticipatory Repudiation

Muse argues that the district court erred in finding that his anticipatory-repudiation theory failed as a matter of law. Muse first mentioned this theory after the district court's summary-judgment order and just before trial, in connection with his breach-of-contract counterclaim. Specifically, his trial brief argued that in addition to breaching the contract by failing to pay benefits, Allianz had also anticipatorily repudiated the contract. Allianz then filed a motion in limine objecting to the recharacterization of Muse's breach-of-contract counterclaim, asserting that Muse's pleadings failed to put Allianz on notice of an anticipatory-repudiation theory and arguing that evidence supporting recovery under such theory should be excluded.

The district court granted Allianz's motion on the basis that, even assuming Muse properly pleaded an anticipatory-repudiation claim, it failed as a matter of law.

24

In so doing, the district court found that because Allianz ultimately processed and paid Muse's claims through April 21, 2017, any alleged delays in doing so could not be interpreted as a declaration by Allianz not to perform. It next concluded that Allianz's subsequent conduct did not reflect an "unequivocal" and "absolute" intent not to perform; rather, "Allianz's processing of Muse's claims and presentation of a request that the [c]ourt rescind the rights and obligations arising from the Policy" reflected Allianz's view that the Policy "was still binding and in effect." App. vol. 9, 1858.

On appeal, Muse argues that the district court erred in rejecting his anticipatory-repudiation claim and insists that he presented sufficient evidence to reach the jury on this theory.[8] Under Oklahoma law, a party repudiates a contract by declaring its intention not to perform, which may relieve the other party from performance.[9] *See Bushey*, 75 P.2d at 195. Critically, a party's refusal to perform must be "distinct, unequivocal, and absolute in terms and treated and acted upon as such by the other party." *Id.* at 196. "[M]ere expressions of dissatisfaction with the

---

[8] Allianz reasserts on appeal that Muse failed to properly plead an anticipatory-repudiation claim. Like the district court, we need not address this point because we resolve Muse's anticipatory-repudiation claim on the merits.

[9] Oklahoma courts have sometimes stated that application of anticipatory repudiation applies to bilateral contracts. *See Bushey v. Dale*, 75 P.2d 193, 196 (Okla. 1937); *Bourke v. W. Bus. Prods., Inc.*, 120 P.3d 876, 883 (Okla. Civ. App. 2005). And "[i]nsurance policies are generally unilateral contracts." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 599–600 (6th Cir. 2004). But the parties have not addressed whether the Policy here is a bilateral or unilateral contract or whether anticipatory repudiation applies in the insurance context. Thus, we merely assume, without deciding, that the doctrine applies here.

contract, or of a desire to rescind it, or of reluctance to perform it, or of intention to refuse to perform, in the absence of absolute refusal itself," are not sufficient to constitute repudiation. *Id.*

Without relying on any Oklahoma authority, Muse first asserts that Allianz repudiated the Policy by denying Muse's claim, filing suit, and accusing Muse of fraud and conspiracy. Although this evidence shows that Allianz disputed whether Muse qualified for benefits under the Policy, it falls short of an absolute refusal to perform. *Cf. Ferrell Const. Co., Inc. v. Russell Creek Coal Co.*, 645 P.2d 1005, 1007–08 (Okla. 1982) (sending letter declaring agreement cancelled constituted repudiation); *Bourke*, 120 P.3d at 885–86 (announcing intention not to perform obligation under stock purchase agreement and telling opposing parties they could "tear the agreement up" constituted sufficient evidence of repudiation).[10]

---

[10] The district court, in further support of its conclusion that Allianz's lawsuit was not an act of repudiation, relied on two decisions from this court applying different state law. *See Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1184 (10th Cir. 2005) (finding no anticipatory repudiation under Colorado law where insurer "at no time preemptively denied coverage . . . but instead chose to have the issue of coverage adjudicated"); *Bill's Coal Co., Inc. v. Bd. of Pub. Utils.*, 682 F.2d 883, 885–86 (noting that lawsuit "urging an interpretation of [a] termination clause" was not repudiation or breach of contract under Missouri law). Muse contends that *Royal Maccabees* and *Bill's Coal* are distinguishable because Allianz's lawsuit went beyond contract interpretation, included fraud and conspiracy claims, and sought to recover past payments. We need not linger on this argument, however, because it is clear from the Oklahoma precedent discussed above that Allianz's conduct did not constitute anticipatory repudiation. Moreover, in our view, Allianz's lawsuit sought to enforce the Policy, not repudiate it. And the Policy itself provides that Allianz can seek "a refund of any payment . . . [if] the payment was made because of fraud committed by [the insured]." App. vol. 1, 60.

26

In an attempt to meet the absolute-refusal standard, Muse next points us to deposition testimony from Patty Wuensch, the Allianz employee responsible for managing Muse's claims. Muse seizes on an exchange between his counsel and Wuensch during her deposition. Muse's counsel asked Wuensch, "You think you might pay [Muse] even though you lose the case—or even though you win the case? Can you imagine a situation where that might be true?" App. vol. 8, 1739. In response, Wuensch said, "No." *Id.*

According to Muse, Wuensch's response reflects Allianz's "true position" because she testified that "she could not imagine a scenario wherein Allianz would continue to pay benefits to Muse." Aplt. Br. 49. But Muse reads too much into this snippet of Wuensch's testimony. In the questioning posed by Muse's counsel immediately before and after this exchange, Wuensch indicated that she could not "speculate" whether Allianz would pay Muse future benefits and that it was "not up for [her] to decide." App. vol. 8, 1739–40. So in context, Wuensch's testimony simply indicates that she did not know whether, depending on the outcome of this litigation, Allianz would pay benefits to Muse in the future. This hardly illustrates an "absolute refusal" to perform. *Bushey*, 75 P.2d at 195. And Muse points to no other evidence of Allianz's absolute refusal to perform or complete disavowal of the Policy. We therefore affirm the district court's pretrial ruling that Muse cannot establish an anticipatory-repudiation claim as a matter of law.

**B.    Muse's Evidence of Damages**

Muse next argues that the district court erred in excluding, on Allianz's motion, the evidence he proffered in support of the damages element of his breach-of-contract counterclaim. The district court divided its ruling into three separate time periods. First, it excluded evidence of damages incurred from April 22, 2017, to March 30, 2018, relying on its prior ruling that Muse was not entitled to benefits during this time period. Because we reverse the district court's decision with respect to Muse's coverage from April 22 to December 31, 2017, we also reverse the district court's grant of the motion in limine for this time period. But because we affirm the coverage ruling with respect to January to March 2018, we affirm the district court's grant of the motion in limine for this time period.

Second, the district court considered Muse's proposed evidence of damages incurred from March 30, 2018, to the present. It found that Muse was not entitled to recover damages because he had not complied with the Policy by submitting a proof of loss or claim for payment of services performed after March 30, 2018. And the district court found that Muse could not rely on his anticipatory-repudiation argument to excuse noncompliance because, as it had already ruled, Muse's anticipatory-repudiation claim failed as a matter of law. On appeal, Muse reasserts that he was relieved from performing under the Policy as a result of Allianz's alleged repudiation. But because we affirm the district court's determination that Muse's anticipatory-repudiation claim fails as a matter of law, we also affirm the district

28

court's decision to prohibit Muse from presenting evidence of damages based on an anticipatory-repudiation theory.

Third, the district court excluded Muse's evidence of future damages not yet accrued, reasoning based on its prior ruling that Muse could not rely on anticipatory repudiation to excuse his obligations under the Policy (for example, the requirement that Muse file a proof of loss to receive benefits). We, again, agree with this rationale. The district court also ruled that "Muse's request for the present value of future Policy benefits [wa]s too speculative and contingent upon external events to comprise proper damages under Oklahoma law." App. vol. 9, 1864. In support, it cited Oklahoma law requiring breach-of-contract damages be "clearly ascertainable." *Id.* (quoting Okla. Stat. tit. 23, § 21). And "clearly ascertainable" means damages that are "in both their nature and origin, . . . the natural and proximate consequence of the breach and not speculative and contingent." *Florafax Int'l, Inc. v. GTE Mkt. Res., Inc.*, 933 P.2d 282, 296 (Okla. 1997).

Muse argues on appeal that his eligibility for payment of future Policy benefits is not too speculative "because he is entitled to the full Daily Benefit regardless of charges and his daily benefit amount is certain." Aplt. Br. 51. But even assuming that the calculation of the *amount* of future benefit losses is not unduly speculative, that is not enough. What Muse fails to adequately address is that to meet the Policy's eligibility requirements, he must be certified as being Chronically Ill "within the previous 12 months." App. vol. 1, 55. Muse appears to assume that he will be entitled to Policy benefits for the rest of his life because his treating physicians "have

29

certified he is Chronically Ill and that his impairment and need for assistance with his ADLs will not improve but will *likely* worsen." Aplt. Br. 51–52 (emphasis added). But the word "likely" demonstrates the problem: It is unduly speculative to assume, at this point, that Muse will obtain the required periodic certification that he is Chronically Ill for the rest of his life. Notwithstanding the fact that Muse has previously been certified as Chronically Ill and that his condition may, in fact, deteriorate, we cannot clearly ascertain that Muse will always be Chronically Ill. Thus, we affirm the district court's determination that Muse cannot present evidence of not-yet-incurred future damages.

In sum, we affirm the district court's anticipatory-repudiation ruling. We reverse the district court's evidentiary ruling as to the time period from April 22 to December 31, 2017, which means that Muse may present evidence of damages on his breach-of-contract claim as to this time period. However, because Muse may not rely on an anticipatory-repudiation theory to excuse his noncompliance with the Policy's terms after December 31, 2017, we affirm the district court's ruling excluding evidence of breach-of-contract damages as to the time period beginning on January 1, 2018. And because we consider Muse's evidence of future damages too speculative, we affirm the district court's ruling as to future damages.

## III.    Attorney Fees

After trial, both parties moved for attorney fees under an Oklahoma statute providing, among other things, that "costs and attorney fees shall be allowable to the prevailing party" in litigation between an insurer and an insured. Okla. Stat. tit. 36,

§ 3629(B). Muse moved for attorney fees on the basis that the jury rendered a verdict in his favor on Allianz's fraud and conspiracy claims. Allianz also moved for attorney fees, arguing that it prevailed on both its declaratory-judgment claim regarding Muse's coverage from April 22, 2017, to March 31, 2018, and on Muse's bad-faith and breach-of-contract counterclaims. The district court denied both motions, finding that (1) Muse was not entitled to attorney fees because § 3629(B) does not encompass claims raised by an insurer that are "predicated upon the insured's alleged misconduct," R. vol. 10, 2340; and (2) Allianz was not entitled to attorney fees because it did not submit a written rejection of Muse's claims within 90 days of its receipt of Muse's proofs of loss, as required by the statute.

Both parties appeal. We review the district court's legal conclusions regarding attorney fees de novo, including its statutory interpretation. *N. Tex. Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank*, 222 F.3d 800, 817 (10th Cir. 2000); *Cent. Kan. Credit Union v. Mut. Guar. Corp.*, 102 F.3d 1097, 1104 (10th Cir. 1996).

Section 3629(B) provides that it is the insurer's duty after "receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within sixty . . . days of receipt of that proof of loss." If "a dispute arises over the payment of benefits," *Hamilton v. Northfield Ins. Co.*, 473 P.3d 22, 24 (Okla. 2020), and a judgment is "rendered to either party," the statute further provides for the award of "costs and attorney fees" to the "prevailing party," § 3629(B). The purpose of the statute is to create "an incentive for insurance companies to promptly investigate and resolve claims submitted by their insureds." *Hamilton*, 473 P.3d at

31

24. It does so by "creating fee-shifting disincentives if the insured's claim is not speedily resolved." *Id.* at 24–25. Recovery of costs and attorney fees under § 3629(B) "embraces both contract- and tort-related theories of liability *so long as the insured loss is the core element of the prevailing litigant's recovery*." *Taylor v. State Farm Fire & Cas. Co.*, 981 P.2d 1253, 1262 (Okla. 1999).

As a threshold issue, because Muse may reassert his bad-faith counterclaim and a portion of his breach-of-contract counterclaim on remand, it would be premature for us to evaluate whether either party is entitled to attorney fees as to these claims. Similarly, because we reverse summary judgment as to a portion of Allianz's declaratory-judgment claim, it would be premature for us to evaluate whether either party is entitled to attorney fees as to that claim. Thus, we limit our review to Muse's claim for attorney fees based on the jury's verdict in his favor on Allianz's fraud and conspiracy claims.

The Oklahoma Supreme Court recently clarified that § 3629(B) *only* pertains to "an *insured's* request to the insurer to be made whole for a covered loss"—not to claims advanced in litigation. *Hamilton*, 473 P.3d at 26 (emphasis added). In other words, § 3629(B) applies to claims that "directly flow[] from the insured's written claim of loss, arising under the insurance contract and duly submitted to the insurer for payment of benefits." *Id.* Thus, the critical question is whether Allianz's fraud and conspiracy claims directly flow from Muse's written claim of loss. We think not. Indeed, Muse cites no authority indicating that § 3629(B) encompasses fraud and conspiracy claims raised by an insurance company in litigation against its insured,

32

and we have found none. Nor is that lack of authority surprising, given that the purpose of the statute is to incentivize insurance companies "to promptly investigate and resolve claims *submitted by their insureds*." *Id.* at 24 (emphasis added); *see also Taylor*, 981 P.2d at 1258–59 ("Ever since this court's pronouncement in *Oliver's Sports Center, Inc. v. Nat'l Standard Ins. Co.*, [615 P.2d 291 (Okla. 1980),] § 3629 has been held to authorize counsel-fee awards in both contract and tort claims *against the insurer*, so long as the insured loss constitutes the core element of the awarded recovery." (emphasis added) (footnote and emphasis omitted)). In short, Muse's claim for attorney fees resulting from successfully defending against Allianz's fraud and conspiracy claims does not have Muse's insured loss as a core element of the claim; instead, as the district court put it, Allianz's claims are "predicated upon [Muse's] alleged misconduct." R. vol. 10, 2340. Thus, we conclude that Muse cannot obtain attorney fees under § 3629(B) for prevailing on Allianz's fraud and conspiracy claims raised in litigation because such fees are not contemplated by the statute.

Because we find that Allianz's fraud and conspiracy claims are not eligible for attorney fees under § 3629(B), we need not consider the parties' arguments as to who prevailed on these claims and whether Allianz met the statute's requirements to timely reject or offer to settle Muse's claims after receiving his proof of loss. We reverse the portion of the district court's order denying attorney fees as to Muse's breach-of-contract and bad-faith counterclaims and Allianz's declaratory-judgment

claim, but we affirm the portion of the order denying Muse's request for attorney fees as to Allianz's fraud and conspiracy claims for the reasons explained herein.[11]

**Conclusion**

We reverse in part and affirm in part the district court's summary-judgment order. Specifically, because we find that the financial-liability exclusion is ambiguous when read in tandem with the rider and that a reasonable insured would interpret the rider to supersede the financial-liability exclusion, we hold that the district court erred in determining that the exclusion applied to bar Muse's coverage from April 22 to December 31, 2017. For this reason, we (1) reverse the district court's grant of summary judgment on Allianz's declaratory-judgment claim with respect to this time period and (2) reject Allianz's cross-appeal seeking to expand the scope of relief on its declaratory-judgment claim. And because the district court's rejection of Muse's bad-faith claim rested on its declaratory-judgment ruling, we likewise reverse its bad-faith ruling. However, we affirm the district court's determination that Muse was not entitled to benefits from January 1 to March 31, 2018, because the record evinces no genuine dispute of material fact as to whether Pearson was supervised by a Home Health Care Agency during that time.

We also reverse in part and affirm in part the challenged pretrial rulings. In particular, we affirm the district court's grant of Allianz's motion in limine with

---

[11] Muse alternatively argues in his reply brief that we should exercise our discretion under Tenth Circuit Rule 27.4 to certify this issue to the Oklahoma Supreme Court. Given his belated request and our disposition of the issue, we decline to do so.

respect to Muse's anticipatory-repudiation claim because he fails to present any evidence that Allianz absolutely refused to perform under the Policy. We likewise affirm the district court's evidentiary ruling that Muse may not present damages evidence based on an anticipatory-repudiation theory. We also affirm the district court's determination that Muse's evidence of future damages is too speculative to be admissible. But we reverse the district court's ruling as to the evidence of damages that Muse may present for the April 22 to December 31, 2017 time period, and Muse may reassert his breach-of-contract claim as to this period.

We likewise affirm in part and reverse in part the district court's order denying attorney fees. We reverse the portion of the district court's order pertaining to Muse's counterclaims and Allianz's declaratory-judgment claim, as those claims may proceed on remand. We affirm the order with respect to Allianz's fraud and conspiracy claims because the governing statute does not apply to such claims.

As a final matter, we grant Muse's unopposed motion to seal eight pages of proprietary commercial documents in the joint appendix. This case is remanded for further proceedings consistent with this order and judgment.

Entered for the Court

Nancy L. Moritz
Circuit Judge

20-6026, 20-6185, 20-6186 *Allianz Life Ins. Co. v. Muse*

**TYMKOVICH**, Chief Judge, dissenting in part.

In my view, Gene Muse had adequate notice that Allianz would rely on the policy exclusion, which unambiguously bars Muse's claims. Thus, the district court correctly entered a declaratory judgment for Allianz based on the policy exception.

The majority sets forth the important facts. In short, Allianz suspected that Ms. Patia Pearson and Mr. Muse had a personal relationship, and that Pearson would provide medical care to Muse at no cost. It even warned Muse, years before the litigation commenced, that "[you will receive] no benefits if there is no financial liability" attributed to Pearson's care. App., Vol. III at 505. But at the time Allianz filed its complaint, it had limited evidence to support this theory. So, as the majority notes, the complaint relied primarily on Allianz's theory that Muse was not truly disabled, which was supported by surveillance footage. But the district court did not abuse its discretion in allowing the exception argument in the summary judgment proceedings; thus, the majority correctly reaches the merits of Allianz's claim.

As I see it, however, the policy exception unambiguously barred Muse's insurance claims. The district court did not err when it granted partial summary judgment for Allianz based on the policy exclusion. The insurance policy may be inartfully drafted, but it is clear.

For three reasons, the policy language unambiguously barred Muse's claims. First, the opening clause, "[i]f you meet the Payment of Benefit provision . . . ," applies

to the entire sentence.[1]  The opening clause could not conflict with the ending clause "regardless of actual charges"—if the opening clause is not satisfied, the sentence has no legal effect.  The claimant must accrue *some* qualified expense, after which he is eligible for the daily benefit.  This is true regardless of the amount of the charges he incurred relating to that qualified expense.[2]  The phrase "regardless of actual charges" must be read in the context of the sentence.

Second, the benefit payable must be "for covered services."  If a service falls under an exception, it is not covered by the policy and is not a "covered service."  Care by a loved one falls under an exception.

Finally, the sentence is followed by a qualifier: "This applies to each benefit *you qualify for* as described under the Benefit Provisions in the Policy."  App., Vol. I at 50 (emphasis added).  The benefit provisions again state that a claimant only qualifies where his claim "is not subject to any limitation or exclusion."  App., Vol. I at 56.  Because Pearson's care was subject to an exclusion, it is not a qualifying expense.

---

[1] In full, the relevant provision reads: "If you meet the Payment of Benefits provision under the Policy, the benefit amount payable to you for covered services will be equal to the full Daily Benefit shown in the Benefit Information section of the Benefit Schedule, regardless of actual charges incurred by you.  This applies to each benefit you qualify for as described under the Benefit Provision in the Policy."  App., Vol. I at 50.

[2] The majority argues it would be absurd for Allianz to pay the full coverage amount if the covered expense were $0.01 per day, but not if it were $0.00.  I do not agree—the insurer pays for covered expenses and, rather than haggling over the details, it pays the full coverage amount if there is any covered expense.  Of course, if there is no covered expense at all, then the insurance company does not pay.  This is a reasonable way to handle small daily payments for covered expenses.

2

The meaning of the policy language is unambiguous.  Removed of legalese, the sentences mean if a claimant has a qualifying expense, he will receive the maximum payment, even if his expense is less than that maximum payment.  For example, if the claimant submits a qualifying expense of $50 per day, and the daily benefit is $100 per day, he is still entitled to the full $100 per day benefit.  But if he does not have a qualifying expense, he will receive no payment at all.  Because Muse had no qualifying expense, he was not entitled to receive payment.

Because the policy exception unambiguously barred Muse's claims, I would affirm the entirety of the district court's judgment.  Thus, I respectfully dissent as to the reversal of summary judgment for Allianz from April 22 to December 31, 2017.  I also dissent as to the related bad faith claim and evidentiary ruling.  I join the rest of the majority's opinion, including its affirmance of summary judgment for the time period from January 1 to March 31, 2018.